## HARTRANFT v. OLIVER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF PENNSYLVANIA.

No. 190.   Argued March 22, 1888. — Decided April 9, 1888.

A vessel arrived at a port of the United States from a foreign port on the
30th of June, 1883, and was entered at the custom-house on that day.   A
custom-house inspector took charge of it, and the vessel remained with
unbroken hatches until after the following 1st of July.   *Held*, — that the
goods on board, being in the custody and under the control of officers
of the customs, were in " a public store," or " bonded warehouse," within
the meaning of those terms as used in § 10 of the act of March 3, 1883,
22 Stat. 488, 525, and were subject to the duty imposed by the provisions
of that act.

THE court stated the case as follows :

In 1883 the plaintiffs were merchants in the city of Phila-
delphia, and during that year they imported from Leghorn,
Italy, by the bark Pellegra Madre, 155 cases of salad olive oil,
and ten cases of lamp olive oil.  The bark arrived at the port
of Philadelphia on Saturday, the 30th of June, 1883, and was
entered at the custom-house of that port between the hours of
one and two in the afternoon.  It was not practicable on that
day after that time to remove the cases from the vessel into
any public store or bonded warehouse; and the next day, July
1st, 1883, was Sunday.   On the 7th of July the cases were
entered in bond at the custom-house, and on the same day the
plaintiffs made a withdrawal entry for the goods, and offered
to pay the defendant, who was at the time collector of the
port, duty thereon at the rate of 25 per cent *ad valorem*, as
provided by § 6 of the act of Congress of March 3d, 1883, 22
Stat. 494, c. 121; but the defendant refused to permit the with-
drawal entry, or to accept the duty at that rate, and exacted
duty on the 155 cases of salad olive oil, gauging $645\frac{63}{100}$ gal-
lons, at the rate of one dollar per gallon, and on the ten cases
of lamp olive oil, gauging one hundred gallons, at the rate of

25 cents per gallon, the whole making the sum of $670.63, which was paid by the plaintiffs within ten days after liquidation of the entry, under protest, they claiming that the oil was only subject to duty at the rate of 25 per cent *ad valorem.* The difference between the amount of duties exacted and paid, and the amount which the plaintiffs claimed were leviable upon the goods was four hundred and thirty-five dollars and sixty-two cents ($435.62). From the decision of the collector the plaintiffs appealed to the Secretary of the Treasury, who approved the decision; and thereupon they brought this action in the Court of Common Pleas for the County of Philadelphia in Pennsylvania to recover the alleged excess of duties exacted. On petition of the collector the action was removed to the Circuit Court of the United States, where issue was joined, and the action tried, resulting in a special verdict, finding the several facts stated above; and also that from the time of the arrival and entry of the bark in the port of Philadelphia, June 30, 1883, until after payment of the duty exacted, July 7th, the "vessel remained with unbroken hatches, and with a custom-house inspector in charge of the same."

Upon the special verdict the court rendered judgment for the plaintiffs for the amount claimed, with interest; and to review this judgment the case is brought here on writ of error.

In his general circular to collectors of customs of May 19th, 1883, the Secretary of the Treasury, in giving construction to § 10 of the act of March 3d, 1883, said, "that all goods imported before said act takes effect, and which are entered in bond on or before that date, and for which permits to land, designating the warehouse, have been issued, and which have not then been delivered on payment of duties, are to be regarded as subject to duty under said act. This rule will prevail, whether the goods are actually within the walls of a bonded warehouse on that day, or on the dock, or on shipboard in port, or undergoing transportation in bond, either after appraisal or under the immediate transportation act."

*Mr. Solicitor General* for plaintiff in error.

*Mr. Edward L. Perkins* for defendant in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The duties exacted by the collector, and paid by the importers, who were plaintiffs below, were imposed by a clause in § 2504, Title 33 of the Revised Statutes, 2d ed. p. 478. As the vessel, in which they were brought, arrived at the port of Philadelphia, and was entered at the custom-house on the 30th of June, 1883, they would be deemed imported on that day, so as to be subject to the duties thus prescribed, were it not for provisions in the act of March 3, 1883, and the custody taken of the vessel and goods by an officer of the custom-house on the day of its arrival in port, and kept by him until after the first of July following. That act declared that on and after the first day of July, 1883, certain designated sections should be a substitute for Title 33 of the Revised Statutes. 22 Stat. 489, c. 121. One of these sections provides that the duties on all preparations known as "expressed oils," not specifically enumerated or provided for in the act, shall be 25 per cent *ad valorem*. Olive oils, both salad and lamp, are expressed oils within the meaning of this section, and are not specifically enumerated or provided for elsewhere in the act. Section 10 of the act declares, "that all imported goods, wares, and merchandise, which may be in the public stores or bonded warehouses on the day and year when this act shall go into effect, except as otherwise provided in this act, shall be subjected to no other duty upon the entry thereof for consumption than if the same were imported respectively after that day; and all goods, wares, and merchandise remaining in bonded warehouses on the day and year this act shall take effect, and upon which the duties shall have been paid, shall be entitled to a refund of the difference, between the amount of duties paid and the amount of duties said goods, wares, and merchandise would be subject to if the same were imported respectively after that date." 22 Stat. 525, c. 121.

The plain meaning of this section is, that, though goods are imported before the act takes effect, yet if they are kept until

after that period in a public store or bonded warehouse, that is, in the custody and under the control of officers of the customs, they shall be subjected only to the duties thereafter leviable when they are entered for consumption. If previously to such entry duties have been paid on goods imported before the act took effect, which are afterwards kept in a public store or bonded warehouse, that is, in the custody and control of officers of the government, the importer is entitled to a refund of the difference between the amount paid and the amount which would be leviable if they were imported after the act took effect. In other words, goods imported before the act took effect, if kept in the custody and control of the government, are to be charged with duties according to the law in force when they are entered for consumption; that is, when passed over to the control of the importer or owner. The place in which the goods are thus kept is not the essential fact, but the custody of the government, and the consequent exclusion of control over them by the owner, which calls for the suspension of previous duties. There is manifest justice in the rule that goods thus withheld from the control of the owner or importer shall be subject only to such duties as are leviable by the law when he is at liberty to take possession of them. Ordinarily, goods in the custody and control of officers of the customs are placed in a public store or bonded warehouse, and thus the designation of the goods as thus placed is, in the legislation of Congress, in effect a designation, and no more, of their being in such custody. But goods on board of a ship, in charge of a custom-house officer, preliminary to their removal to a public store or a bonded warehouse, and during the time necessary for that purpose, are in like custody, and so are, within the spirit and intent of the law, subject only to such duties as are leviable when the goods are freed from such custody. So far as the government is concerned, they are in the same position as if technically in a public store or bonded warehouse. When in either of those places, they cannot be removed without a permit from the collector. When on shipboard, in charge of a custom-house inspector, they are in the same condition, and cannot be removed without a like

permit. By statute collectors are required to put one or more inspectors on board of every vessel immediately on her coming within a collection district, and no merchandise can be un loaded or removed from the vessel without a permit in writing from the collector. Rev. Stat. §§ 2875, 2876.

The act of Congress of March 28, 1854, which is now embraced in § 2971 of the Revised Statutes, in providing for the deposit of goods in public stores and bonded warehouses, declares that " any goods remaining in public store or bonded warehouse beyond three years shall be regarded as abandoned to the government "; and in the construction of this clause the Treasury Department has decided that the period limited for their remaining in a public store or a bonded warehouse includes the time on shipboard, after the arrival of the ship in port. Treasury Regulations of 1857, article 438.

We are, therefore, of opinion that, within the spirit and intent of the 10th section of the act of March 3, 1883, the goods were not chargeable with duties, whilst on board the bark, in custody of an officer of the customs, at any greater rate than they would have been chargeable if in custody of such officer in a public store or bonded warehouse of the government; and that therefore duties were only leviable on the goods by the act which went into effect on the first of July, 1883. The intent of the legislature is to be followed, even if not strictly within the letter of the statute. It follows that the construction placed upon the section by the Secretary of the Treasury in his circular of May 19, 1883, to collectors of customs, is correct, so far as it recognizes as subject to duties under it goods imported before the act took effect, whether " actually within the walls of a bonded warehouse on that day, or on the dock, or on shipboard in port, or undergoing transportation in bond, either after appraisal or under the immediate transportation act "; but is incorrect so far as it limits the application of the rule to goods, imported before the act took effect, " which are entered in bond on or before that date, and for which permits to land, designating the warehouse, have been issued, and which have not then been delivered on payment of duties." If goods thus imported can be

brought within the provisions of the 10th section in any case, when not actually in a public store or bonded warehouse, they should be deemed within those provisions when, by reason of the custody of officers of the customs, it is impracticable to remove them from the vessel, whether they are at the time entered in bond or not.

*Judgment affirmed.*