KENNEDY & MOON *v.* UNITED STATES (No. 1906).[1]

CONSTRUCTION, PARAGRAPH N OF SECTION 3, TARIFF ACT OF 1913—"THIRTY DAYS AFTER * * * LIQUIDATION."

Where merchandise had been withdrawn from warehouse in bond under a claim of free entry as being for American vessels, the 30 days allowed by paragraph N of section 3, tariff act of 1913, began to run from the time the collector assessed the merchandise with duty, and not from the time the duty was paid. A protest filed more than 30 days after the assessment and less than 30 days after the payment will not be considered.

United States Court of Customs Appeals, January 28, 1919.

APPEAL from Board of United States General Appraisers, Abstract 41835.

[Affirmed].

*Gerry & Wakefield* and *Harold W. Hastings* for appellants.
*Bert Hanson*, Assistant Attorney General, for the United States.

[1] T. D. 37905 (36 Treas. Dec., 80).

[Oral argument Oct. 29, 1918, by Mr. Wakefield and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

In this case the Board of General Appraisers dismissed the protest of the importers upon motion of the Government, on the ground that it had not been filed within 30 days next after the liquidation which it sought to challenge. The importers have appealed from that decision, and this is the sole question presented by the record.

On May 20, 1914, Kennedy & Moon brought into port by the steamship *Bremen* certain 10 cases of merchandise, numbered, respectively, 1316, 1317, 1320, 1321, 1322, 1323, 1324, 1325, 1326, and 1327. The protest now in question contains no reference to cases 1316 and 1317, consequently these will not be mentioned again in this decision.

On the following day—to wit, May 21—the importers made a warehouse entry of the merchandise, describing it as "electrical apparatus intended for wireless outfits for American vessels."

The importers claim that the merchandise is entitled to free entry as materials of foreign production necessary for the construction or repair of vessels built in the United States, or as materials necessary for the building or repair of the machinery of vessels built in the United States, or as articles or materials necessary for the outfit and equipment of vessels built in the United States, within the provisions of Revised Statutes, section 4132, as amended by section 5 of the act of August 24, 1912, and of section 4, paragraph J, subsections 5 and 6, of the tariff act of 1913.

On November 25, 1912, in T. D. 32956, and on February 5, 1914, in T. D. 34150, the Treasury Department published rules and regulations whereby merchandise claimed to be free of duty under the provisions just referred to might be withdrawn upon the execution of a bond by the importers conditioned for the payment of duties upon the merchandise or the production of proofs of its nondutiable character under the provisions aforesaid.

A reference to the Treasury regulations, issued as T. D. 32956, discloses the fact that the condition prescribed for the bond thus to be proffered is as follows:

Now, therefore, the condition of this obligation is such that if the above-bounden principal obligor shall, before the departure of the said vessel from the customs district where she may have been built, produce to the collector of customs at the port of ——— the evidence required by law and the regulations of the Secretary of the Treasury that the said goods, wares, and merchandise have been used within the limits of the customs district of ——— for the purposes authorized by the said provision of law, then this obligation shall be void; otherwise it shall remain in full force and effect.

On June 9, 1914, the importers withdrew the merchandise under favor of the foregoing provisions by filing two withdrawal entries,

one covering cases 1320–1323, the other covering cases 1324–1327, and by filing therewith two several bonds conditioned according to the Treasury requirements.

The first of the two withdrawal entries was accompanied by an affidavit of which the following is a copy:

*Application for the free entry, under section 5, act of· August 24, 1912, of articles of outfit and equipment for vesesls.*

PORT OF NEW YORK, N. Y.,
*June 9, 1914.*

I, Jos. C. Murray, vice president of Kennedy & Moon, do hereby apply for the free entry, under section 5 of the act approved August 24, 1912, of the following described articles imported or to be imported by me per the steamship *Bremen* on the 20th day of May, 1914, which are to be used on board the American steamship *Crystobal* of Panama Railroad & Steamship Co., Pier 67 of North River, on or about the 15th day of June, 1914, as outfit and equipment of the American steamship *Crystobal* (name of vessel), which was built in the United States at ——— in ——— (year), and is described as follows: T. D. 1320–1323, four cases electrical apparatus.

I do further declare that the said articles will not be used for any other purpose than that set forth in this application, and that a bond in the form required by the regulations of the Secretary of the Treasury under the said provisions of law will be given by me to insure compliance with the said law and regulations.

The second entry was accompanied by a similar affidavit, except that the vessel for which the apparatus was said to be intended was stated to be. the *Advance*.

It may therefore be observed that on June 9, 1914, the importers in each instance by means of formal and verified affidavits duly claimed free entry for the merchandise under section 5, act of August 24, 1912, as articles of outfit and equipment for vessels, and filed their bonds, which were duly accepted, conditioned according to the foregoing requirements, and thereupon on the same day— to wit, June 9, 1914—the merchandise was surrendered to the importers without the payment of any duties thereon.

However, on July 14, 1914, the collector, with the verified applications before him, decided against the claim of the importers for free entry of the merchandise, and held the importation to be dutiable at the rate of 20 per cent ad valorem as manufactures of metal under paragraph 167 of the tariff act of 1913. The collector accordingly liquidated the entries on that day, and assessed the merchandise with duty under the classification and at the rate just mentioned, the regularity of which is not questioned by the importers. The importers filed no protest within 30 days after this liquidation, nor was any protest filed by them until that of May 3, 1915.

Among the original papers forwarded in the case we find four affidavits. One of these was verified on July 2, 1914, and stated that the merchandise in cases 1324–1327 had been received on board the American steamship *Advance* of the Panama Railroad & Steamship Co., at pier 67, North River, as the outfit and equipment of that

vessel, and that no part of the merchandise had been or would be disposed of in any other manner. Another of the affidavits was verified on August 28, 1914, and was to the same effect as the foregoing one. The third affidavit was verified on June 9, 1914, and made a similar statement concerning the merchandise in cases 1320–1323, except that the vessel named therein was the *Crystobal*. The fourth affidavit was verified on August 28, 1914, and was to the same effect as the third.

It does not distinctly appear either from the record or from the affidavits themselves just when the latter were filed with the collector. If it be assumed that they were respectively filed at or near the date of their verification, it would then appear that on July 14, 1914, being the date of the liquidation, the collector had before him not only the formal application of the importers for the free entry of the merchandise but also an affidavit for the discharge of their bond. But in any event the claim for free entry was before the collector when he made the liquidation of July 14, 1914, and this was the only liquidation ever made by him, and is the one which is challenged by the protest now before the court.

On April 27, 1915, the importers received notice from the collector to pay the duty which had been assessed upon the merchandise, and on May 3, 1915, they paid the amount thereof and filed their protest.

We think the foregoing recital of the facts clearly sustains the decision of the board. Paragraph N of section 3, tariff act of 1913, prescribes the time within which a protest may be filed in the following terms:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon.

It is clear, as already stated, that the only liquidation of duties which occurred in the present case was that made on July 14, 1914, wherein the collector overruled the claim of the importers for free entry, and assessed the merchandise with duty. This was the assessment which the importers were later compelled to pay, and against which they wished to protest. No other liquidation or

assessment was had in the case. The protest therefore should have been filed within 30 days after the date of the liquidation in question. It was not sufficient to file it within 30 days after the payment of the duties under the present circumstances, since this course delayed it beyond the 30-day period provided by the foregoing statute.

The decision of the board is therefore *affirmed.*