## BERTROSE Co. *v.* UNITED STATES (No. 2265).[1]

1. RELIQUIDATION.

A reliquidation is an abandonment of all prior liquidations.

2. LIMITATION ON RELIQUIDATION—BRANDY IN WAREHOUSE.

Brandy was warehoused in 1917, the entry liquidated in 1918, and the brandy withdrawn and duties paid in 1919. The collector went through the form of reliquidating in 1922. The liquidation of 1918 was at the $2.10 per gallon additional duty levied by the revenue act, approved October 3, 1917, upon distilled spirits withdrawn for beverage purposes, and the one of 1922 at the $6.40 per gallon additional duty levied by the revenue act, approved February 24, 1919, upon such spirits under such circumstances. It was the collector's duty to reliquidate at the time of withdrawal; and the one-year limitation upon reliquidation provided by section 21 of the act of June 22, 1874, began to run at that time. Consequently, the reliquidation of 1922 was barred.

United States Court of Customs Appeals, November 17, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8608 (T. D. 39459)

[Reversed.]

*Allan R. Brown* for appellant.

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Marcus Higginbotham, jr.*, of counsel) for the United States.

[Oral argument October 4, 1923, by Mr. Brown and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

The undisputed facts in this case are as follows: The merchandise, brandy (distilled spirits), was imported and entered in bonded warehouse July 16, 1917. The entry was liquidated January 4, 1918, and assessed at $2.60 per gallon under paragraph 237 of the tariff act of 1913 plus $2.10 per gallon under section 300 of the revenue act, approved October 3, 1917, but as the merchandise remained in the warehouse the assessment was not then paid.

April 10, 1919, the brandy was entered for consumption, withdrawn from warehouse, and whatever duty the collector then demanded thereon was paid without protest.

March 21, 1922, the collector went through the form of reliquidating the entry at the rate of $2.60 per gallon under the tariff act of 1913 plus $6.40 per gallon, by virtue of section 600 of the revenue act, approved February 24, 1919.

---

[1] T. D. 39893.

Against this attempted reliquidation the importer seasonably protested, claiming the same to be illegal on the ground that it contravened the statute of limitations contained in section 21 of the act of June 22, 1874.

The Board of General Appraisers overruled the protest.

Said section 21 is as follows:

> Whenever any goods, wares, and merchandise shall have been entered and passed free of duty, and whenever duties upon any imported goods, wares, and merchandise shall have been liquidated and paid, and such goods, wares, and merchandise shall have been delivered to the owner, importer, agent, or consignee, such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the time of entry, in the absence of fraud and in the absence of protest by the owner, importer, agent, or consignee, be final and conclusive upon all parties.

The only question here is whether or not the attempted reliquidation of March 21, 1922, was or was not legal.

Importer contends that this attempted reliquidation is barred by the provisions of said section 21 inasmuch as it is not claimed that a pending protest or fraud justified it. Importer further contends that it is the uniform administrative and judicial rule that, when the rate of duty is changed while merchandise subject thereto is in customs warehouse, the collector must reliquidate the entry before or at the time of withdrawal and can not do so afterwards, and cites United States v. Comarota (2 Fed. 145); Treasury rulings found in T. D. 25453 and T. D. 33949; also opinions of the Board of General Appraisers in T. D. 22805 (G. A. 4865) and T. D. 23074 (G. A. 4930), and Taylor & Co. v. United States (11 Ct. Cust. Appls. 15; T. D. 38636).

The Government contends that the liquidation of January 4, 1918, was not in fact a liquidation for the purposes of this case, because no duties were then settled or paid and the merchandise was not delivered to importer; and also because the subsequent revenue act, approved February 24, 1919, changed the rate of duty thereon; further, that there was no liquidation and settlement of duties within the meaning of section 21 at the time the merchandise was withdrawn from customs custody; that said section has no application to a case where a new statute intervenes and expressly imposes additional duties; that the collector, as a matter of law, was not required to liquidate the entry at the time the goods were withdrawn; that he had authority to liquidate the same at any time thereafter; that the payment of duties at the time of withdrawal must be regarded as a payment of estimated duties only; and that, therefore, the so-called reliquidation of March 21, 1922, was the only liquidation of the entry and was lawful and valid.

So far as necessary we proceed to examine these respective claims, having in mind that the sole question here is as above stated.

The Treasury Department in 1904 (T. D. 25453, supra) somewhat exhaustively considered this question and reviewed pertinent authorities, among others, T. D. 22805 (G. A. 4865), decided by the Board of General Appraisers in 1901. In that case the board in substance concluded that where goods in bonded warehouse became subject to a different rate of duty than when placed therein the collector's refusal to reliquidate at the time of withdrawal must be taken as a decision by him that a former liquidation was correct, although there was no particular moment of time prior to withdrawal at which the collector was required to make the reliquidation. And the department, agreeing with the board, held that in such case the collector's duty was to reliquidate such entries either before or at the time of withdrawal; that if he failed or refused so to do the importer's right of protest accrued at the time of withdrawal.

Again in 1913 (T. D. 33949) the department expressed its adherence to the same view and there is nothing to indicate that it has ever departed therefrom. This conclusion seems to rest in part at least upon the fact that the applicable statutes have provided that at the time of withdrawal from bonded warehouse it was incumbent upon importer to settle and pay all the duties then found assessable against the merchandise as a condition precedent to its delivery to him, and the further fact that he was entitled then to know definitely what course to take to protect his rights.

Consistently therewith, this court held in Taylor & Co. *v.* United States, supra, that under similar circumstances the importer's right of protest first accrued at the time of such withdrawal and settlement of duties. It was in that case pointed out, in view of the facts there present, that this was the first time when the applicable rate of duty upon the merchandise so withdrawn could be fixed and the collector was called upon expressly or impliedly to determine both the rate and amount of duties then accruing. We think this is sound law as applicable to the facts in the instant case and this decision is limited thereto.

In this connection see American Cigar Co. and Falk & Bro. *v.* United States (146 Fed. 484); Westray *v.* United States (85 U. S. (18 Wall.) 322); Merritt *v.* Cameron (137 U. S. 542); Customs Regulations 1915, Chapter XII.

To the Government's contention that the liquidation of January 14, 1918, was not a liquidation because the duties were not then paid, it is only necessary to say that inasmuch as the goods were in bonded warehouse it was not incumbent upon the importer then to pay the same. That the collector deemed it a liquidation there can be no doubt. Article 615 of the Customs Regulations of 1915 provides that when a liquidation is completed the word "liquidated" must be stamped upon the entry and that such stamp is legal evidence of liquidation.

The collector, by stamping upon the entry "March 21, 1922, reliq-uidated," recognized that there had been a prior liquidation. This would, if valid, be an abandonment of all prior liquidations.—Robertson v. Downing (127 U. S. 607); United States v. Godchaux Sugars (Inc.) (11 Ct. Cust. Appls. 529; T. D. 39678).

If the doctrine contended for by the Government be upheld, the purpose of section 21 of the act of 1874 in cases of this kind would manifestly be defeated. It was intended thereby to fix a time, after the settlement and payment of duties and the delivery of merchandise to importer, at which a liquidation would be final and conclusive upon all parties in the absence of fraud and protest. It was not contemplated that a collector, by failing to perform his duty to liquidate at the time of withdrawal and place the liquidation stamp upon the entry in cases such as this, could reserve to himself an unlimited time in which the act of liquidation could be performed by him. The statute itself gives him only one year, in the absence of fraud and of protest, in which to make any further reliquidation, and that statute is the measure of his right and power.

See Customs Regulations, 1915, article 640; United States v. Phelps (27 Fed. Cas. 521; 17 Blatch. 312).

It is not intended to hold that in no case may the collector defer final liquidation of an entry for consumption of goods in warehouse until after delivery thereof to importer.

The customs regulations contain provisions that this may be done for importer's convenience.

See also Kennedy & Moon v. United States (9 Ct. Cust. Appls. 49; T. D. 37905).

The judgment of the Board of General Appraisers is *reversed*.